UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**LUCILLE S. JACKSON**,                                    Civil Case No. 1:13-CV-01314-KI

                    Plaintiff,

                                                          OPINION AND ORDER

            v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social Security,

                    Defendant.


            Kathryn Tassinari
            Mark Manning
            Harder, Wells, Baron & Manning, P.C.
            474 Willamette, Suite 200
            Eugene, Oregon  97401

                    Attorneys for Plaintiff


Page 1 - OPINION AND ORDER

S. Amanda Marshall
United States Attorney
District of Oregon
Ronald K. Silver
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97201-2902

Erin F. Highland
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington  98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Lucille S. Jackson brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disabled widow's benefits, disability insurance

benefits ("DIB"), and supplemental security income benefits ("SSI").  I reverse the decision of

the Commissioner and remand for further proceedings.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

Page 2 - OPINION AND ORDER

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The evaluation is carried out by the Administrative Law Judge ("ALJ").  The claimant has the burden of proof on the first four steps.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920.  First, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d),

416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is

conclusively presumed to be disabled.  If the impairment is not one that is presumed to be

disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the

claimant from performing work which the claimant performed in the past.  If the claimant is able

to perform work she performed in the past, the ALJ makes a finding of "not disabled" and

disability benefits are denied.  20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the

fifth and final step to determine if the claimant can perform other work in the national economy

in light of his age, education, and work experience.  The burden shifts to the Commissioner to

show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746.

The claimant is entitled to disability benefits only if he is unable to perform other work.

20 C.F.R. §§ 404.1520(f), 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial

evidence and is based on correct legal standards.  Molina v. Astrue, 674 F.3d 1104, 1110 (9th

Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less

than a preponderance.  Id. (internal quotation omitted).  The court must uphold the ALJ's

findings if they "are supported by inferences reasonably drawn from the record[,]" even if the

evidence is susceptible to multiple rational interpretations.  Id.

### THE ALJ'S DECISION

The ALJ found Jackson had severe impairments of fibromyalgia syndrome, lumbar spine status post fusion with continued discogenic pain, carpal tunnel syndrome, anxiety disorder, narcotic dependence, psychogenic pain syndrome, depressive disorder not otherwise specified, borderline personality disorder, and obesity. The ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.

After reviewing the record, the ALJ found Jackson has the residual functional capacity to perform less than the full range of light work; lift and/or carry and push and/or pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours and sit six hours in an eight-hour day with normal breaks; never climb ladders, ropes, or scaffolds; occasionally perform all other postural activities such as balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to hazards, such as heights and dangerous moving machinery; remember work-like procedures and understand short and simple instructions; unable to understand or remember detailed instructions on a consistent basis; able to carry out short, simple instructions and make work-related decisions; would be limited to occasional interaction with co-workers as a result of her social phobia; complete a normal workday and workweek without the surfacing of any psychologically-based symptoms; ask questions and maintain socially appropriate behavior; accept instruction and respond to appropriate criticism; and to need less rather than more interpersonal contact, including with supervisors.

Based on vocational expert testimony, the ALJ found Jackson could work as a marker, housekeeping cleaner, or collator operator and, thus, was not disabled under the Act.

## FACTS

Jackson alleges she became disabled on March 10, 2008,[1] when she was 48 years old. She only completed the fifth grade but later earned a GED.  Jackson worked as a companion, institutional cook, and domestic cook.

Jackson complains of severe migraines approximately twice a week, which make it difficult to function on some days, and pain in her hands, neck, hips, and between the shoulder blades.  She can stand for 20 minutes; after doing any activity for 30 minutes, Jackson must lie down for 30 minutes to relieve the pain.  Jackson takes two or three naps a day of 60 to 90 minutes each.  She took methadone for pain relief for years but started tapering off in July 2011. The methadone does not completely resolve her pain but allows her to take a bath and move around her apartment.  She completes her household chores such as cooking, washing dishes, or tidying up by working for a few minutes, sitting and resting, and returning to the task.  Her adult children do all of the shopping.

Jackson also complains of mental symptoms, including confusion, anxiety, panic attacks, and depression.  Physical abuse by her parents and husbands caused Jackson to become increasingly frightened around people.  She has little to no social contact other than with her children and grandchildren.

---

[1]  Jackson filed her applications with an alleged onset date of January 31, 2001 but amended the date at the hearing.

**DISCUSSION**

I.    <u>Jackson's Credibility</u>

Jackson claims the ALJ failed to give clear and convincing reasons for rejecting her

testimony.

I decline to accept the Commissioner's invitation to apply agency rules which do not

require clear and convincing reasons to reject a claimant's testimony, when that would be

contrary to Ninth Circuit precedent.  <u>Garrison v. Colvin</u>, 759 F.3d 995, 1015 & n.18 (9th Cir.

2014) (rejecting the government's suggestion to apply a lesser standard than clear and

convincing).  The law in this Circuit is explained as follows:

> In assessing the credibility of a claimant's testimony regarding subjective
> pain or the intensity of symptoms, the ALJ engages in a two-step analysis.  First,
> the ALJ must determine whether there is objective medical evidence of an
> underlying impairment which could reasonably be expected to produce the pain or
> other symptoms alleged.  If the claimant has presented such evidence, and there is
> no evidence of malingering, then the ALJ must give specific, clear and convincing
> reasons in order to reject the claimant's testimony about the severity of the
> symptoms.

<u>Molina</u>, 674 F.3d at 1112 (internal quotations and citations omitted).

The ALJ gave several reasons for discrediting Jackson.  He found the objective medical

evidence did not support the severity of symptoms Jackson claimed.  The ALJ considered

Jackson's fibromyalgia diagnosis and Dr. Ramchandani's examination finding that Jackson was

positive for 17 out of 18 fibromyalgia tender points and had some reduced range of motion, even

though there was no formal fibromyalgia assessment utilizing the American College of

Rheumatology guidelines.  Nevertheless, the ALJ interpreted the vast majority of the physical

examinations in the record as essentially normal, including straight leg-raising test, gait, ability to

get on and off the examination table, walking easily, normal muscle tone and range of motion, and no evidence of joint tenderness or muscle weakness.

Jackson claims these physical findings do not contradict her subjective symptom testimony because her psychogenic pain syndrome and fibromyalgia cause different types of symptoms. Contradiction with the medical record is a sufficient reason for rejecting a claimant's subjective testimony. Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). A review of the chart notes from Drs. Kho, Ramchandani, and Olsen show that Jackson consistently complained of general pain throughout her body, as would be typical of fibromyalgia. Tr. 396, 400, 452, 474. Although Jackson had no difficulty with some of these precise physical tests the ALJ noted, none of the doctors conclude the normal test results are inconsistent with Jackson's diagnoses of fibromyalgia, psychogenic pain syndrome, and somatization disorder. In light of the record as a whole, contradiction with the medical record is not a clear and convincing reason to discredit Jackson.

The ALJ then noted Dr. Kho, Jackson's treating neurologist, diagnosed carpal tunnel syndrome based on positive bilateral Phalen and Tinel's tests but without any electrodiagnostic testing for the condition. Because of the lack of electrodiagnostic testing and the lack of any positive findings by Jackson's primary care physician after the March 2008 diagnosis, the ALJ did not believe the condition caused disabling pain.

I do not consider this a clear and convincing reason to discredit Jackson. Dr. Kho performed two tests helpful in diagnosing carpal tunnel syndrome, observed positive signs in both, and began conservative treatment using nocturnal braces and vitamin therapy. None of this indicates any inconsistency with Jackson's testimony.

Page 8 - OPINION AND ORDER

Next, the ALJ found Jackson's symptom testimony was inconsistent with her daily activities. The ALJ interpreted the testimony to mean Jackson lives alone, cooks for herself, vacuums, washes dishes, and mops floors. There is no evidence, however, that Jackson performs these chores easily.

Jackson testified at the hearing that she does her household chores in small increments with rests in between the active spurts. Her children shop for her. This is corroborated by the lay testimony. A claimant does not have to be utterly incapacitated to be found disabled. Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001). The ALJ's reason is not supported by substantial evidence and is not clear and convincing.

The ALJ reasoned Jackson has not received the type of treatment one would expect for a totally disabled person. Her back surgery and epidural injections were prior to the alleged onset date, and she has had no emergency room visits, hospitalizations, other surgeries, or referrals to specialists. The ALJ noted a fourteen-month gap in treatment between the retirement of Dr. Kho, who acted as her primary care physician, and Jackson's first appointment with her current primary care physician, Dr. Olsen. There was another nine-month gap in treatment after Jackson visited Dr. Olsen a few times.

An unexplained failure to seek treatment or a failure to seek aggressive treatment indicates pain is not as disabling as reported. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). Jackson explained that once Dr. Kho retired, she could not afford the $300 fee to begin seeing a new neurologist. Similarly, Jackson wants to have carpal tunnel surgery but cannot afford it. She has to pay cash whenever she sees Dr. Olsen, so she limits the number of visits. Throughout the

gaps in treatment the ALJ noted, Jackson had a prescription for methadone, her sole treatment for pain. She began seeing Dr. Olsen when she ran out of methadone.

Jackson has adequately explained her failure to seek treatment because of financial concerns, but there is no explanation for why her physicians have not suggested other treatments for some of her ailments. Dr. Ramchandani noted Jackson had never been prescribed any pain-relieving antidepressants which at times can be helpful for some fibromyalgia patients. After joining a methadone program to overcome addiction to painkillers, Jackson continued the methadone for at least eleven years as a pain reliever for fibromyalgia, under Dr. Kho's supervision. Even though the methadone relieved the pain somewhat, it did not completely resolve it, and yet Dr. Kho did not refer her to a rheumatologist or suggest other therapies. The fact that a claimant's symptoms are not severe enough to motivate him to seek other forms of treatment, even if some treatment is underway, "is powerful evidence regarding the extent" of the symptom. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). This reason supports the ALJ's negative credibility determination.

Next, the ALJ noted Jackson had never received treatment for mental health. After seeking treatment from Jackson County Mental Health ("JCMH") service in September 2002, Jackson was terminated from the program three months later because she did not engage in treatment. Jackson explained at the hearing that even JCMH would not accept her without insurance, which she did not have. Her explanation is contradicted by the JCMH form checking the box that Jackson left without explanation and not checking the box that she was unable to pay. Thus, there is evidence supporting this reason.

The ALJ then discussed Jackson's use of methadone to treat her pain.  Jackson explained the drug made her pain more tolerable but made her feel intoxicated.  The ALJ noted the reduction in dosage over the years, but overstated the size of the reduction; the ALJ stated the dose dropped from 160 milligrams to 60 milligrams but the correct lower dosage was actually 120 milligrams. Based on this mistake, the ALJ noted Jackson took significantly higher doses during her highest earning years, prior to her alleged onset date.  Although there was a reduction in dosage after the alleged onset date, the ALJ's calculation error reduces the persuasiveness of this reason.

The ALJ also discussed several of Jackson's statements the ALJ considered inconsistent. These included Jackson's statement to Dr. Ramchandani that she does not smoke, drink, or use drugs; Jackson's August 2010 statement that she could not live alone because of the pain contrasted with her October 2010 statement she was excited about moving to her own apartment; her failure to mention disabling headaches to her doctors until seven months after she began keeping a migraine calendar showing approximately two headaches a week so severe it was difficult to function; and Jackson's requested good cause to excuse her late filing asking for a hearing because of her inability to read and write above a fifth grade level, even though Jackson earned a GED.  Jackson provides explanations and alternative ways to view the inconsistencies, but the ALJ's view of the evidence is supported by the record.  If the record supports multiple rational interpretations, the court must defer to the Commissioner's decision.  Molina, 674 F.3d at 1111.

Although several of the ALJ's reasons to discredit Jackson did not hold up to scrutiny, he gave other reasons which are supported by substantial evidence in the record, including the lack of suggestions from treating doctors for more aggressive treatment, the lack of mental health

treatment, and Jackson's inconsistent statements.  Viewed together, these are clear and convincing reasons to discredit Jackson's subjective symptom testimony and are supported by substantial evidence in the record.  The fact that the ALJ improperly considered some reasons for finding plaintiff's credibility undermined does not mean the ALJ's entire credibility assessment is improper.  If there is substantial evidence supporting the ALJ's conclusion on credibility and "the error does not negate the validity of the ALJ's ultimate [credibility] conclusion, the error is harmless."  Carmickle, 533 F.3d at 1162 (internal quotation omitted).  That is the case here.

In sum, the ALJ did not err in discrediting Jackson.

II.    Physicians' Opinions

    A.    Dr. Alvord

Dr. Alvord, Psy.D., completed a psychological evaluation of Jackson on November 22, 2011, on referral from the state's Presumptive Medicaid Disability Determination Team.  Jackson provided the evaluation to the Appeals Council, which added it to the record but denied Jackson's request for review.

Dr. Alvord diagnosed Jackson with chronic post-traumatic stress disorder, major depressive disorder recurrent (severe, rule out psychotic features), and panic disorder with agoraphobia.  He concluded Jackson's ability to follow instructions is moderately to severely impaired related to severe depression and anxiety, and her ability to concentrate, persist and keep up the pace is moderately to severely impaired.  At the appointment, Jackson was somewhat disheveled and "profoundly anxious glancing around the room, shifting in her chair, jumping at

noises in the hall, and emphasizing subjective distress." Tr. 494.  She was tearful throughout the

evaluation.  Dr. Alvord assessed a GAF of 30[2] and summarized:

> [Jackson] described horrific childhood experience with abuse and an adult
> experience with domestic violence.  She has received limited to no care over the
> years.  At this time her adaptive functioning is considered to fall in the severe
> range of impairment all things considered.  She is in need of intensive psychiatric
> care although given the severity and history of her symptoms her prognosis is
> guarded at best.  It is highly unlikely in my mind that she will function in an
> occupational setting at this time.  She should be monitored very closely for
> increasing suicidal ideation.

Tr. 495.

Jackson contends the opinion of Dr. Alvord demonstrates the ALJ's opinion is not

supported by substantial evidence and establishes she is mentally unable to perform competitive

work.  She notes Dr. Alvord is the only psychologist to examine her since 2002.

Considering the record as a whole, the Commissioner claims the new evidence does not

change the fact that substantial evidence supports the ALJ's decision.

Additional evidence presented to the Appeals Council but not seen by the ALJ must be

considered in determining if the ALJ's denial of benefits is supported by substantial evidence.

Brewes v. Comm'r Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012).  Thus, I must consider

Dr. Alvord's report.

The Commissioner argues Dr. Alvord's conclusions are inconsistent with the mental status

examination he performed.

---

[2]  The GAF (Global Assessment of Functioning) is a scale from 1 to 100, in ten point
increments, that is used by clinicians to determine the individual's overall functioning.  A GAF
of 21 to 30 means "**Behavior is considerably influenced by delusions or hallucinations OR
serious impairment in communication or judgment** (e.g., sometimes incoherent, acts grossly
inappropriately, suicidal preoccupation) **OR inability to function in almost all areas** (e.g., stays
in bed all day; no job, home, or friends).

I disagree.  Dr. Alvord noted Jackson was disheveled, profoundly anxious and jumping at noises, depressed, downtrodden, and tearful.  She made several errors when Dr. Alvord tested her attention and concentration.  Although Jackson's memory was good and he judged her intellectual ability to fall in the low average range, Dr. Alvord's conclusions are not inconsistent with his examination in its entirety.

The Commissioner contends Dr. Alvord's opinion is inconsistent with the record as a whole, including the opinions of Drs. Nicoloff, Kho, Ramchandani, and Olsen.

Although Drs. Olsen, Ramchandani, and Kho are not mental health specialists, the chart notes of Drs. Olsen and Kho briefly discuss mental health issues several times, including suicidal thoughts, affective disorder, and anxiety.  Most of Dr. Kho's charts notes document examinations long before Jackson's alleged onset date.  In the later chart notes, however, he does assess her with anxiety disorder, somatoform disorder, psychogenic pain syndrome, depressive disorder NOS, and borderline personality disorder.  In contrast, Dr. Ramchandani, who examined Jackson only once, did not perform a mini mental health status examination because Jackson did not have any apparent deficits during the examination.

Dr. Nicoloff, the reviewing state agency physician, did not examine Jackson; she relied on the opinion of Dr. Sasser, a psychiatrist.  Dr. Sasser, who found no evidence of depression, completed his evaluation in 2002, six years before Jackson's alleged onset date.  Mental health symptoms can wax and wane.  The Commissioner must interpret records with an understanding of the patient's overall well-being and efforts to keep the symptoms at bay.  Garrison, 759 F.3d at 1017 (cycles of improvement and debilitating symptoms occur commonly; improvement while limiting environmental stressors does not mean a claimant can function successfully in the

workplace).  Dr. Nicoloff also relied on six of Dr. Kho's chart notes.  Two are before Jackson's alleged onset date; the other four document Jackson with normal mood and affect, normal concentration, and no memory difficulties.  Dr. Nicoloff did not make note of Dr. Kho's assessment that Jackson suffered from numerous mental illnesses.

Viewing the record as a whole, Jackson's mental health symptoms appear to have worsened over time as documented by Dr. Kho's chart notes.  This is not surprising in light of her complete lack of mental health treatment.  I am also unpersuaded that a psychologist's opinion should be compared with the opinions of several doctors who are treating or examining Jackson's physical problems and are not focusing on her mental health.  For these reasons, Dr. Alvord's opinion is not inconsistent with the opinions of Drs. Nicoloff, Kho, Ramchandani, and Olsen.  I conclude Dr. Alvord's opinion shows the ALJ's decision is not supported by substantial evidence, when the entire record before the Appeals Council is considered.

B.    Dr. Nicoloff

Jackson contends the ALJ erred in failing to credit part of the opinion of Dr. Nicoloff. Specifically:  (1) her social phobia and depression affected her ability to maintain concentration for extended times on a consistent basis; and (2) she should have an understanding supervisor due to her social anxiety disorder.

The Commissioner argues the ALJ's limitation to understanding short and simple instructions adequately addresses Dr. Nicoloff's opinion about Jackson's ability to maintain concentration for extended times.  The Commissioner claims the ALJ did not err by failing to address Dr. Nicoloff's suggestion that Jackson should have an understanding supervisor because the statement was not a functional assessment of any mental limitation.

I will first address Dr. Nicoloff's statement that Jackson should have an understanding supervisor due to her social anxiety disorder. I agree with the Commissioner that this observation is not a functional assessment of a work limitation. The statement is too vague–Dr. Nicoloff could have meant the supervisor would have to be understanding if Jackson missed too many days of work because she was unable to leave her home or if Jackson suffered panic attacks when interacting with co-workers or if Jackson worked slowly because the disorder interfered with her concentration. There is no way to tell what type of understanding the supervisor would need to possess. Thus, the ALJ did not err by failing to address the statement.

Dr. Nicoloff also opined Jackson's social phobia and depression affect her ability to maintain concentration for extended times on a consistent basis. As part of Jackson's residual functional capacity, the ALJ found Jackson could remember work-like procedures and understand short and simple instructions but was unable to understand or remember detailed instructions on a consistent basis. The ALJ also limited Jackson to occasional interaction with co-workers as a result of her social phobia.

Dr. Nikoloff's full statement is as follows:

> [Jackson] is able to carry out short and simple instructions and make work related decisions. [Jackson's] social phobia and depression affects her ability to maintain concentration for extended times on a consistent basis. [Jackson] would function with limited and occasional interactions with her co-workers as a result of her social phobia. [Jackson] can complete a normal work day/week without the surfacing of any psychologically based symptoms.

Tr. 441.

Moreover, Dr. Nikoloff checked the box showing Jackson was not significantly limited in the ability to maintain attention and concentration for extended periods, in the ability to sustain an

ordinary routine without special supervision, and in the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Tr. 440.

When Dr. Nikoloff's opinion is read in full, she concluded Jackson would not have concentration and pace problems if her co-worker interactions were only occasional.  The ALJ included this limitation, as well as the limitation to short and simple instructions, in Jackson's residual functional capacity.  Thus, the ALJ did not ignore part of Dr. Nikoloff's opinion.

      C.    <u>Dr. Ramchandani</u>

Jackson argues the ALJ erred in failing to address the full opinion of Dr. Ramchandani.  Specifically, the ALJ did not discuss the doctor's opinion that Jackson could stand and walk for an eight-hour workday without restrictions with extra breaks secondary to fibromyalgia.

The Commissioner characterizes Dr. Ramchandani's opinion as concluding Jackson was capable of medium work with the caveat that she be allowed to take extra breaks.  When the ALJ concluded Jackson was only capable of a reduced range of light work, the Commissioner argues the ALJ discounted the entirety of Dr. Ramchandani's opinion.  Moreover, because the doctor did not provide an opinion on the number of breaks Jackson required if she performed a reduced range of light work, the Commissioner contends the ALJ's residual functional capacity is not at odds with Dr. Ramchandani's opinion.

Dr. Ramchandani's full opinion was that Jackson could stand and walk for an eight-hour workday without restrictions with extra breaks secondary to fibromyalgia, that she could sit for an eight-hour workday without restrictions, and that she could lift or carry 25 pounds frequently and 50 pounds occasionally.  The lifting restrictions fit medium work.  20 C.F.R. §§ 404.1567(c),

416.967(c).  I agree with the Commissioner that the extra break limitation would thus be associated with Jackson performing medium work, in Dr. Ramchandani's opinion.  The ALJ, however, limited Jackson to a reduced range of light work.  But Dr. Ramchandani did not give an opinion on the number of breaks Jackson would require when doing light work.  Consequently, the ALJ did not ignore part of Dr. Ramchandani's opinion.

III.    Lay Testimony

Jackson contends the ALJ erred in his consideration of lay evidence from Constance Piran and Bethany Sheridan.

Piran reported Jackson can do minimal, yet adequate, housework but needs hours of rest because of aches and pains.  Jackson's pain delays her chores but migraines "stop her in her tracks."  Tr. 299.  Piran observed Jackson struggle with instructions and withdraw when stressed.  Confrontation causes Jackson to have an immediate response of visible hand shaking.  Jackson is easily distracted and flutters from chore to chore.

Sheridan reported Jackson to be in severe pain all over her body, to suffer from severe headaches, to have daily concentration and memory problems, and to be very depressed.  Jackson has trouble cooking and cleaning, no longer enjoys playing the piano or playing with her grandchildren, and has nearly completely curtailed her relationships with family and friends.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness.  Molina, 674 F.3d at 1114.  The germane reasons must be specific.  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).

Page 18 - OPINION AND ORDER

Jackson argues the ALJ erred in rejecting the lay testimony as both unsupported by and conflicting with medical evidence.  Jackson contends the lay evidence is highly consistent with Dr. Alvord's report.

The ALJ specifically found the medical evidence does not support either of the lay statements.  The ALJ may reject lay witness testimony if it *conflicts* with medical evidence but cannot reject the testimony because it *is not supported* by medical evidence.  Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (may reject lay testimony for conflict with medical evidence); Bruce, 557 F.3d at 1116 (ALJ cannot discredit lay testimony as not supported by medical evidence because SSR 88-13 directs the ALJ to consider lay testimony when the claimant's alleged symptoms are unsupported by medical records).  Here, the ALJ's stated reason was lack of support in the medical record, a prohibited reason.  Moreover, the lay testimony is supported by Dr. Alvord's opinion as well as the years of methadone the treating neurologist prescribed for Jackson's pain.

The ALJ noted neither lay witness lives with Jackson and their observations may not reflect her maximal capacities.  There is no requirement that a lay witness live with a claimant, as long as there is a basis for observation.  Piran lived with Jackson for six months in 2007 and continued to have weekly contact.  Sheridan is the fiancee of Jackson's son and spends a lot of time helping Jackson with household chores.  Both spend sufficient time with Jackson to provide accurate observations.  Thus, the ALJ's reason has limited validity.

The ALJ reasoned Piran reported Jackson engaged in activities that are not as severely limited as one would expect for a totally disabled person, including cooking complete dinners, performing housework, entertaining children, and helping her sons with transportation.

Jackson claims the ALJ failed to discuss Piran's observations of Jackson's difficulties and need for hours of rest. I agree–Piran mentions several times in the questionnaire that Jackson's energy is only high for very short periods before she must rest. The gist of the testimony is that Jackson breaks household tasks up into small pieces with hours of rest sprinkled between them throughout the day. The ALJ's reason relies on an incomplete summary of Piran's testimony.

These errors, however, are compensated for by the ALJ's next reason.

The ALJ discounted the lay statements because they were based on Jackson's subjective complaints of pain, which the ALJ discredited for valid reasons. If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ only has to refer to those reasons when rejecting similar testimony by a different witness. Molina, 674 F.3d at 1114 (citing Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (because the ALJ provided legal reasons for rejecting the claimant's own subjective complaints, and the lay witness's testimony was similar to the claimant's complaints, it follows the ALJ also gave germane reasons for rejecting the lay testimony)).

Neither Piran nor Sheridan testified Jackson suffered from any symptoms more severe or different in nature from what Jackson herself claimed. The three testified to Jackson's severe pain, severe headaches, fatigue and need for extra rests and breaks, and mental symptoms of confusion, anxiety, and depression. Because the ALJ gave valid reasons for rejecting Jackson's subjective symptom testimony and referred to that credibility decision in rejecting similar lay testimony, the ALJ gave germane reasons for rejecting the lay testimony of Piran and Sheridan.

IV.    Remedy

Although the ALJ did not have the opportunity to review Dr. Alvord's opinion, it shows the ALJ's decision is not supported by substantial evidence when the entire record before the Appeals Council is considered.

The court has the discretion to remand the case for additional evidence and findings or to award benefits.  The court can award benefits "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." Brewes, 682 F.3d at 1164 (internal quotation omitted).

"Where the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence." Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1233 (9th Cir. 2011).  If, however, the Appeals Council did consider the additional evidence in denying review of the ALJ's decision, and the court concludes the Commissioner's decision is not supported by substantial evidence after considering the entire record including the additional evidence, the court may either award benefits if there are no unresolved issues or remand the case.  Brewes, 682 F.3d at 1164-65 (Appeals Council considered letter from claimant's treating psychologist and mental health nurse practitioner giving additional information on the nature of claimant's limitations and stating claimant would miss multiple days of work a month; Ninth Circuit awarded benefits based on the letter after finding it was not inconsistent with the same providers' treatment notes); Ramirez v. Shalala, 8 F.3d 1449, 1254-55 (9th Cir. 1993) (Appeals Council considered a report from claimant's treating psychologist which gave more information on claimant's mental limitations; Ninth Circuit awarded benefits based on the report after finding there was no

substantial evidence to the contrary and the report was sufficient to conclude claimant met Listing 12.04); <u>Vasquez v. Astrue</u>, 572 F.3d 586, 597 (9th Cir. 2009) (Appeals Council considered the results of psychological testing; Ninth Circuit remanded to allow ALJ to consider the testing results and how claimant's limitations affect her residual functional capacity; the parties presented no facts clearly indicating the proper outcome of steps four and five of the disability determination evaluation).

Here, the Appeals Council did consider Dr. Alvord's opinion, so I have the discretion to either award benefits or remand for further proceedings.

To recap, Dr. Alvord concluded Jackson is moderately to severely impaired in her ability to follow instructions, concentrate, persist, and keep up the pace, and severely impaired in her adaptive functioning.  Dr. Alvord found it highly unlikely Jackson could function in an occupational setting, but he did not translate Jackson's impairments into the number of days a month she would miss work.  Even if I accept Dr. Alvord's opinion, it does not contain enough information to determine if Jackson could work a competitive job.  Moreover, Dr. Alvord assessed Jackson to be much more severely limited than any other medical source in the record.  Consequently, I conclude the record is not fully developed, and I remand the case for rehearing.  I ask the ALJ to review Dr. Alvord's opinion and to consider whether to obtain another psychological examination which focuses on the effect of Jackson's mental impairments on her residual functional capacity.

Page 22 - OPINION AND ORDER

**CONCLUSION**

The decision of the Commissioner is reversed.  This action is remanded to the

Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the

record as explained above.  Judgment will be entered.

IT IS SO ORDERED.

Dated this _____14th_____ day of October, 2014.


         _/s/ Garr M. King_____
         Garr M. King
         United States District Judge